# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
### HARRISON DIVISION

CANDY ELLIS                                                    PLAINTIFF


v.                          CIVIL NO.        3:08-CV-03070-JRM


MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                DEFENDANT

## <u>MEMORANDUM OPINION</u>

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision

of the Commissioner of Social Security Administration (Commissioner) denying his claim for

supplemental security income ("SSI") under Title XVI of the Social Security Act (hereinafter

"the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the court must

determine whether there is substantial evidence in the administrative record to support the

Commissioner's decision.  *See* 42 U.S.C. § 405(g).

## I.      <u>Procedural Background</u>:

Plaintiff filed her SSI application on March 31, 2006, claiming disability since March 11,

2006 (Tr. 85). The state Disability Determination Services denied Plaintiff's application (Tr.

66). Pursuant to Plaintiff's request, the ALJ conducted a hearing on March 27, 2008, where

Plaintiff and a lay witness appeared and testified (Tr. 11-45). Attorney Frederick Spencer

represented Plaintiff at the administrative hearing (Tr. 11).

On May 28, 2008, ALJ Edward M. Starr issued an unfavorable decision (Tr. 51-59). In

his decision, the ALJ found that Plaintiff had severe impairments due to Hepatitis C and obesity

(Tr. 53 - Finding 2). However, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1, Subpart P, Regulation No. 4, for presumptive disability (Tr. 53 - Finding 3). The ALJ also found that Plaintiff's subjective allegations were not entirely credible (Tr. 17). Relying on the vocational expert's response to a set of interrogatories, the ALJ found that other work existed in significant numbers in the national economy that Plaintiff can perform (Tr. 59 - Finding 9, 134-138). As a result, the ALJ found that Plaintiff was not under a disability at any time from the date of his decision (Tr. 59 - Finding 10). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review (Tr. 1-3).

## II.    **Applicable Law**:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

III.    **Applicable Facts**

Plaintiff is a 32 year old woman with an 11th grade education. As a member of the workforce, she spent six years working as a Certified Nursing Assistant (CNA), two years as a

cashier, and a brief period as an animal caretaker with the Missouri Humane Society. (Tr. 104). However, during much of the same times she was working these jobs, Plaintiff was also a waitress at a number of restaurants over a thirteen year span beginning in 1993 and ending in 2006. (Id).

On July 18, 2000 the Plaintiff was seen by Dr. Bruce Robbins for dizzy spells. The Plaintiff had no tongue biting, loss of consciousness, or history of significant closed head trauma. (Tr. 198). She was also oriented x 3, attentive and speech, knowledge, recent and remote memory, and concentration were normal. (Tr. 199).

On March 2, 2006 the Plaintiff was diagnosed with Hepatitis C as a result of her attempt to give plasma (Tr. 144-146).

On March 31, 2006 the Plaintiff stated in her Disability Report that the illness, injuries, or conditions that limited her ability to work was Hepatitis C because she was tired all the time. (Tr. 103). She further stated that she stopped working on February 28, 2006 because "we moved to Springfield." (Id.).

On June 8, 2006 D. Dove conducted a face to face social security interview with the Plaintiff and did not observe any difficulty that the Plaintiff had with hearing, reading, breathing, understanding, coherency, concentrating, talking, answering, sitting, standing, walking, seeing using hands or writing. (Tr. 100).

On June 19, 2006 the Plaintiff completed a function report and stated that she got tired really easy (Tr. 115), that her hobbies were reading and computer (Tr. 119) but that her illness affected her ability to lift, squat, bend, sit, kneel, memory, completing tasks, concentration and getting along with other. (Tr. 120).

On June 20, 2006 the Plaintiff presented to Dr. David G. Paff, with Doctors Occupational Medicine, in Springfield, Missouri. (Tr. 147-156). Dr. Paff noted that the Plaintiff's glucose was normal, kidney function testing was normal, liver function test normal, that her white blood count was mildly elevated and that the hepatitis HCV antibody is "67.1 with normal less than 1." (Id.). Dr. Paff's Summary stated that this is "a lady with hepatitis C, hypertriglyceridemia, and obesity. She also has chronic headaches and generalized weakness. She is not disabled." (Id.).

On July 17, 2006 a mental evaluation of the Plaintiff was performed by Dr. C.K.Bowles (Tr. 157-169) who noted that the Plaintiff made no initial complaints of psychological symptoms or limitations, had never sought treatment for any psychological condition, and that she had a history of substantial gainful employment. (Tr. 169)

On August 17, 2006 the Plaintiff presented to the Mountain Home Christian Clinic and was seen by Dr. Bond who noted that she was "asymptomatic except undergoing evaluation for management of hepatitis C" and that she was to see "Dr. Padayo (??)" (the court believes this is Dr. Badejo) for followup. (Tr. 189).

On February 5, 2007 the Plaintiff presented to Twin Lakes Medical Specialists, PA and was seen by Dr. Badejo or Dr. Roelke for treatment of her Hepatitis C. Pegasys 180 mg and Copegus 1000 mg was prescribed. Notes indicate that the Plaintiff "works" on her home computer and takes care of the household. No symptoms were noted. (Tr. 213-215).

On February 15, 2007 the Plaintiff presented to the Mountain Home Christian Clinic complaining of headaches and frequent mood and wide mood swings. She was seen by Dr. Cheney who prescribed trazodone 150 mg. for depression. (Tr. 187). See was seen again on March 1, 2007 complaining that the trazodone was not working and her prescription was changed

to Seroquel. (Tr. 185-186).

Plaintiff was seen again at Twin Lakes on March 5, 2007 with an indication that she would begin therapy. (Tr. 212). She was seen again on March 20, 2007.  Her weight was 190 pounds and her abdomen was noted to be obese but otherwise unremarkable. (Tr. 210). Seen again on April 26, 2007 and noted that the Plaintiff was being treated for HCV, genotype 1 with Interferon alpha-2a 180 mcg weekly and ribavirin 1000.  She had completed 4 weeks of treatment but had not been compliant with her treatment. (Tr. 208). Plaintiff was seen again on May 9, 2007 and Dr. Badejo noted that the Plaintiff had been fairly intolerant and also noncompliant with drug therapy and that the "fact that the patient has very low viral level along with normal liver function test and especially a normal liver biopsy (albeit small sample) makes treatment at this time not of utmost priority." (Tr. 206).

## IV. __Discussion__:

The ALJ found that the Claimant had not engaged in substantial  gainful activity since March 31, 2006, the application date and that the claimant had the severe impairments of hepatitis C, and obesity but that these impairments did not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 415.926). (Tr. 53).

The claimant has the burden of proving her disability by establishing a physical or mental impairment lasting at least twelve months that prevents her from engaging in any substantial gainful activity. 42 U.S.C. § 1382c(a)(3)(A); *Ingram v. Chater*, 107 F.3d 598, 601 (8th Cir. 1997). The Act defines a physical or mental impairment as an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically

acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 1382c(a)(3)(D).

**Hepatitis C:**

On March 2, 2006 the Plaintiff was diagnosed with Hepatitis C[1] as a result of her attempt to give plasma (Tr. 144-146). On March 31, 2006 the Plaintiff stated in her Disability Report that the illness, injuries, or conditions that limited her ability to work was Hepatitis C because she was tired all the time. (Tr. 103). She further stated that she stopped working on February 28, 2006 because "we moved to Springfield." (Id.). The ALJ noted that none of the Plaintiff's laboratory results (Tr. 145, 148-156,193) met or equaled the requirements set forth in the Listing of Impairments in 20 CFR 404, Suppart P, Appendix I, Listing 5.05. (Tr. 54). On June 20, 2006 the Plaintiff presented to Dr. David G. Paff, M.D. who found that all of her laboratory test were normal and that she was not disabled. (Tr. 148). It appears that the Plaintiff presented to Dr. Roelke and Dr. Bodunrin Badejo to begin some treatment for her Hepatitis C (Tr. 215). The Plaintiff was initially started on Pegasys 180 mcg weekly and Copegus 1000 mg daily (Tr. 212) and she appears to have tolerated this medication well. (Tr. 210)

Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits. *See, e.g., Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987); see also *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir.1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication). *Warre v. Commissioner of Social Sec. Admin.* 439

---

[1]Hepatitis C is an infection caused by a virus that attacks the liver and leads to inflammation. Most people infected with the hepatitis C virus (HCV) have no symptoms. In fact, most people don't know they have the hepatitis C infection until liver damage shows up, decades later, during routine medical tests. (Www.mayoclinic.com)

F.3d 1001, 1006 (C.A.9 (Or.),2006).

On May 9, 2007 Dr. Badejo noted that the Plaintiff had been started on pegylated interferon and ribavirin therapy for four week before discontinuing therapy because of intolerable side effects. Dr. Badejo also noted that the Plaintiff's most recent available CBC and liver function test were all within normal limits and that her liver biopsy showed intact hepatocyte architecture without evidence of significant inflammatory changes in the parenchyma or portal tract. (Tr. 205). Dr. Bedejo's assessment was that the fact that the Plaintiff "has very low viral level along with normal liver function tests and especially a normal liver biopsy makes treatment at this time not of utmost priority. (Tr. 206).

A treating physician's medical opinion is given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2).

In this case the Plaintiff's treating physicians, Dr. Paff and Dr. Badejo both found no evidence of liver disease and Dr. Paff determined that the Plaintiff was not disabled.

**Obesity:**

Social Security Ruling ("SSR") 00-3p, which states that obesity is a "medically determinable impairment" that can constitute a severe impairment under Listing 12.05C, and reminds adjudicators "to consider [obesity's] effects when evaluating disability." SSR 00-3p, 65 Fed. Reg. 31,039, 2000 WL 33952015 (May 15, 2000).

While obesity can impose a significant work-related limitation, substantial evidence supports the ALJ's rejection of obesity as a disability. Nothing in Plaintiff's medical records indicates that a physician ever placed physical limitations on Plaintiff's ability to perform

-8-

work-related functions because of her obesity. See *Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir. 2004). Plaintiff's own Function Report also failed to identify any physical limitations caused by obesity. Plaintiff's failure to testify at her hearing before the ALJ about any work related limitations caused by her obesity further undermines her claim. *See Anderson v. Barnhart*, 344 F.3d 809, 814 (8th Cir. 2003); *See Pena v. Chater*, 76 F.3d 906, 909 (8th Cir.1996) (noting that the ALJ is under no " 'obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability' ") (quoting *Brockman v. Sullivan*, 987 F.2d 1344, 1348 (8th Cir.1993)).

The ALJ found that the Plaintiff's alleged fatigue, headaches, back pain, seizures (dizzy spells), hearing voices (hallucinations), nausea, vomiting, sleepiness and depression were not shown by medically acceptable clinical and laboratory diagnostic techniques to demonstrate a medically determinable mental or physical impairment that could reasonably be expected to produce the alleged symptoms.

**Dizzy Spells:**

The only allegation of dizzy spells is in July 2000 when the Plaintiff saw Dr. Arnold. Dr. Arnold noted that the Plaintiff smoked one pack of cigarets per day for the last seven years but that all of her test were normal. (Tr. 198-200). He prescribed Dilantin 200 mg a day for a week and then increase to 300 mg a day. There is no further medical history on this condition.

In general, the failure to obtain follow-up treatment indicates that a person's condition may not be disabling or may not be as serious as alleged. *See Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir.1995) (holding "[g]iven his alleged pain, Shannon's failure to seek medical treatment may be inconsistent with a finding of disability").

**Nausa:**

The Plaintiff first complained of nausea on August 9, 2006 when she presented to the Baxter Regional Medical Center. She had no vomiting, weakness or dizziness (Tr. 239) and she was prescribed Phenergan for nausea, Ultram for pain and magnestium citrate and was discharged. (Tr. 240). The Plaintiff was asymptomatic when she saw Dr. Bond on August 17, 2006. (Tr. 189). The only other instance of nausea and vomiting occurred while the Plaintiff was on drugs for the initial treatment of her Hepatitis C on April 26, 2007. (Tr. 208). It should also be noted during this visit that the Plaintiff denied depression, fatigue or suicidal ideation. (Id.). There is no evidence that the prescribed medications were not successful treatment for the Plaintiff's nausea. "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004) (internal quotations omitted); see 20 C.F.R. §§ 404.1530(b), 416.930(b)

**Headaches:**

The Plaintiff first complained of headaches on August 17, 2006 when she was seen by Dr. Cheney who prescribed Ultram. (Tr. 187). It appears that the Plaintiff took this drug between February 15, 2007 and October 8, 2007 but Dr. Badejo suspended her drug treatment for Hepatitis C on May 9, 2007 because of her low viral level along with a normal liver function test and normal liver biopsy. (Tr. 206).

The allegation of back pain and hearing voices contains no medical documentation in the file and it does not appear that the Plaintiff ever sought treatment for these complaints. *See Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir.1995) (holding "[g]iven his alleged pain, Shannon's failure to seek medical treatment may be inconsistent with a finding of disability").

**Depression:**

The Plaintiff alleged disability due to Hepatitis C and not due to depression. (Tr. 102-103). The fact that the plaintiff did not allege depression as a basis for her disability in her application for disability benefits is significant, even if the evidence of depression was later developed. See *Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir.1993); *Dunahoo v. Apfel*, 241, F. 3d 1033, 1039 (8th Cir. 2001). However, the evaluation of a mental impairment is often more complicated than the evaluation of a claimed physical impairment. *Andler v. Chater,* 100 F.3d 1389, 1393 (8th Cir. 1996).

The only time that the Plaintiff was seen by a doctor for depression was when she presented to Dr. Cheney with the Mountain Home Christian Clinic on February 15, 2007. (Tr. 187). Dr. Cheney noted that the Plaintiff was having some fear that her present relationship with her boyfriend was in danger. Dr. Cheney prescribed trazodone for the Plaintiff's depression. (Id.). There is no indication that the trazodone was not effective or that the Plaintiff sought other medical treatment for depression. In general, the failure to obtain follow-up treatment indicates that a person's condition may not be disabling or may not be as serious as alleged. *See Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir.1995) (holding "[g]iven his alleged pain, Shannon's failure to seek medical treatment may be inconsistent with a finding of disability").

The ALJ had a mental evaluation conducted on July 17, 2006 by Dr. C.K. Bowles who found that the Plaintiff had no medically determined impairments. (Tr. 157). It does not appear that Dr. Bowles administered any test to the Plaintiff but Dr. Bowles in his Consultant's Notes states as follows:

> Claimant makes no initial complaints of psy. Related symptoms or

limitations. Claimant has hx. of SGA. ADL's indicates complaints of memory and concentration problems. Claimant has sought no treatment for alleged conditions. DFS CE - Paff. 6/20/06 indicates no complaints of memory or concentration problems. No noted positive findings on examination. Despite alleged problems, claimant denies problems with understanding or following instructions. Claimant cooks, shops, does chores. Hx of semi-skilled work. Mo MDI established.

Plaintiff presented no medical evidence showing that she complained of or sought medical treatment for a mental impairment during the relevant period. Under the regulations, Plaintiff must provide evidence that she is disabled. 20 C.F.R. § 416.912(a). A physical or mental impairment must be established by medical evidence not only by a claimant's statements of her symptoms. Id. § 416.908.

Although Plaintiff alleges that she did not have the financial means to obtain medical treatment, she testified that she smokes at least one pack of cigarettes per day, which contradicts her lack of money allegations (Tr. 27). Furthermore, the evidence shows that Plaintiff was never denied medical treatment due to her financial status. A claimant must demonstrate a lack of funds, a refusal of treatment because of the lack of funds, and that other alternatives or resources have been attempted (e.g., clinics, charitable and public assistance agencies, etc.), must be explored. See SSR 82-59, 1982 WL 31384 (S.S.A.). "Contacts with such resources and the claimant's financial circumstances must be documented." Id. Plaintiff has not supported her alleged inability to afford treatment with credible evidence. *See Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir.1999) (ALJ appropriately discounted claimant's argument he could not afford prescription pain medication or treatment absent evidence he sought and was denied low-cost or free care, and no evidence claimant sought to finance his medications by forgoing his three pack

a day smoking habit). There is simply no evidence that Plaintiff was ever denied medical or mental care because of her financial condition. *See Murphy v. Sullivan*, 953 F.2d 383, 386-387 (8th Cir. 1992).

The Progress Note dated April 26, 2007 for the Plaintiff indicated that she **denied** any depression, fatigue, or suicidal ideation. (Tr. 208). When the Plaintiff presented to Dr. Paff for an evaluation for disability on June 20, 2006 no reference was made to any depression or any mental impairment and Dr. Paff found her not to be disabled. (Tr. 147). This is confirmed by Dr Badejo on May 9, 2007 when he noted that the Plaintiff showed appropriate mood and affect and discontinued her Hepatitis C treatment and only continued her on an antibiotic for three day. (Tr. 206).

In evaluating the severity of a mental impairment, the Agency first evaluates the pertinent symptoms, signs, and laboratory findings to determine whether a claimant has a medically determinable mental impairment. See 20 C.F.R. § 416.920a(b). Consistent with the regulations, the ALJ properly noted that medically acceptable clinical or laboratory documents did not support Plaintiff's alleged mental impairment of depression. (Tr. 53). As a result, the ALJ found that Plaintiff's alleged mental impairment was nonsevere (Tr. 53 - Finding 2).

**Cognitive Dysfunction:**

The ALJ noted that on July 24, 2007, upon referral by her attorney, Dr. Vann Smith conducted a one-time evaluation of Plaintiff (Tr. 56, 171-174). Based on Plaintiff's representations, Dr. Smith reported that Plaintiff had hepatitis C, seizure disorder, degenerative disc disease, and chronic non-psychogenic pain (Tr. 56, 171- 174). Dr. Smith diagnosed Plaintiff with "cognitive dysfunction, non-psychotic, diffuse, secondary to general medical conditions,"

and then issued a Mental Residual Functional Capacity Questionnaire in which he assessed Plaintiff with rather restrictive limitations (Tr. 56, 173-179). The ALJ noted that Dr. Smith's conclusion "following a single visit with [Plaintiff was] based in part on [Plaintiff's] subjective report of her symptoms . . ." (Tr. 57). *Hilkemeyer v. Barnhart*, 380 F.3d 441, 446 (8th Cir. 2004) (ALJ properly rejected diagnoses of mental health examiners who conducted a single examination of plaintiff and whose conclusions seemed to based solely upon plaintiff's subjective complaints). *See Clement v. Barnhart*, 186 Fed.Appx. 702, 703, 2006 WL 1736629, 1 (8th Cir., June 2006) (unpublished). ("We reject Clement's contention that the ALJ wrongly discredited the opinion of Dr. Vann Smith, a neuropsychologist who saw Clement one time based on her attorney's recommendation, and completed a mental RFC questionnaire wherein he assessed Clement as unable to pursue gainful employment. We conclude the ALJ properly discounted the RFC assessment in Dr. Smith's report after finding it was not supported by his own testing and evaluation, or by other medical evidence in the record, and was inconsistent with Clement's reported daily activities").

While Dr. Smith stated that the Plaintiff's medical records were being requested it does not appear that he ever reviewed any of the Plaintiff's medical records and based his opinion upon the clinical history, "as obtained from the patient." It appears that the Plaintiff stated that she had a positive history of steadily worsening neurocognitive and emotive symptoms. (Tr. 171). There is nothing in the medical history to document such a claim.

The only head trauma that the Plaintiff alleges is when she hit her head in 1999 on her son's breathing machine. (Tr. 23). When the Plaintiff saw Dr. Robbins for her dizzy spells on July 18, 200 he noted that the Plaintiff "does not have tongue biting, loss of consciousness, or a

history of significant closed head injury". (Tr. 198). It is clear that Dr. Robbins did not consider

this incident, if it was related to him, to be significant but he prescribed Dilantin 200 mg. It is

also clear that the Plaintiff did not seek treatment for this condition after seeing Dr. Robbins in

2000. On June 8, 2006 D. Dove with the conducted a face to face social security interview with

the Plaintiff and did not observe any difficulty that the Plaintiff had with hearing, reading,

breathing, understanding, coherency, concentrating, talking, answering, sitting, standing,

walking, seeing using hands or writing. (Tr. 100). The Plaintiff acknowledged that she would get

out one or two times a week, that she can drive a car, and shop for food in stores. (Tr. 118). She

acknowledge that she followed written instructions pretty good and spoken instructions good but

that she might have to hear it more than one time. (Tr. 120). No medical record gives any

indication that the Plaintiff has any cognitive dysfunction and all records are to the contrary.

A claimant's ability to perform limited household chores does not necessarily prove that

claimant capable of full-time employment." *See Ekeland v. Bowen*, 899 F.2d 719, 722 (8th

Cir.1990) (citing Easter v. Bowen, 867 F.2d 1128, 1130 (8th Cir.1989)). *Dixon v. Barnhart* 324

F.3d 997, 1002 (C.A.8 (Ark.),2003). In this case the record shows more than just household

chores and the Plaintiff represented to Dr. Badejo, on February 5, 2007, that she worked on her

home computer and that she takes care of the household. (Tr. 213). In her disability application

the Plaintiff indicated her ability to drive and to shop. (Tr. 118). In the initial application for

disability the Plaintiff only noted that it was Hepatitis C that prevented her from working, but,

when asked why she was not working now she responded it was because she had "moved to

Springfield." (Tr. 103).

The Plaintiff's examination by Dr. Robbins in July 2000 was unremarkable and she did

not exhibit any neurological, musculoskeletal or cardiovascular deficit. (Tr. 198-200). When the

Plaintiff saw Dr. Paff in June 2006 he noted that all her test were normal and that the Plaintiff

was not disabled. (Tr. 148). When the Plaintiff was seen by Dr. Badejo in May 2007 he noted

that the Plaintiff was well developed and in no acute distress, and that her neurological,

musculoskeletal and cardiovascular were normal, and that she exhibited appropriate mood and

affect. (Tr. 205-206).

The ALJ noted that the medical evidence did not support Plaintiff's allegation concerning

the intensity, persistence, and limiting effects of her symptoms (Tr. 55). As a result, the ALJ

assessed Plaintiff's credibility by thoroughly examining the applications documents and

testimony at the hearing in accordance with relevant Eighth Circuit case law, regulations, and

Social Security Rulings (Tr. 55-57). *See Polaski v. Heckler*, 751 F.2d 943, 948 (8th Cir. 1984);4

20 C.F.R. § 416.929 (evaluation of symptoms); SSR 96-7p, 1996 WL 374186 (S.S.A.)

(evaluation of symptoms and credibility assessment). Plaintiff's subjective complaints of pain

and limitation may be discounted in Social Security disability proceedings if they are inconsistent

with the evidence as a whole. *See Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998). If the ALJ

discredits a claimant's credibility and gives good reason for doing so, the Eighth Circuit has held

that it will defer to the ALJ's judgment even if every factor under Polaski is not discussed in

depth. *See Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004); *Dunahoo v. Apfel*, 241

F.3d 1033, 1038 (8th Cir. 2001).

The ALJ also noted that Plaintiff had a history of being noncompliant with her

medications (Tr. 56, 205-207). In assessing credibility, the ALJ can consider evidence of

noncompliance with medical treatment. *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir.

2001).

The Court believes that the ALJ was correct when he determined that the Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 53).

**RFC:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003). "Under this step, the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect her RFC." *Id*.

After finding that Plaintiff did not have past relevant work, the ALJ properly used vocational expert testimony to determine whether Plaintiff can perform other work available in the national economy (Tr. 136-137). The ALJ asked the VE to assume a hypothetical person of

Plaintiff's age, education, and residual functional capacity (Tr. 136). Specifically, the ALJ asked the VE whether there were any jobs in the national and regional economy that a hypothetical person with the following residual functional capacity could perform:

> The [hypothetical] person can occasionally lift [and] carry 20 pounds and frequently 10 [pounds]. She can push [and] pull within these limitations. She can sit for 6 hours and can stand [and] walk for 6 hours. She is moderately limited in the ability to understand, remember, and carry out complex instructions and respond appropriately to usual work situations and routine work changes. Moderately limited means there is more than a slight limitation but the person can still perform in a satisfactory manner.

(Tr. 136).

In response to the ALJ's hypothetical question, the vocational expert testified that the hypothetical individual could work as a house keeping cleaner, with 1,719 jobs existing regionally and 201,110 nationally; small products assembler, with 1,568 jobs existing regionally and 74,085 nationally; and poultry eviscerator, with 4,900 jobs existing regionally and 46,000 nationally (Tr. 137).

The vocational expert's testimony supports the ALJ's determination that there were jobs existing in significant numbers in the national economy which Plaintiff can perform. Testimony from a vocational expert based upon a properly phrased hypothetical question constitutes substantial evidence. *See Warburton v. Apfel*, 188 F.3d 1047, 1050-51 (8th Cir. 1999); *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996).

**V.    Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed.

The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

IT IS SO ORDERED this February 10, 2010.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE